**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN DOE and LOWICK LLC,

Plaintiffs,

v.

CAPGEMINI AMERICA, INC., KAVITA NAR, SANDEEP KURNE, FLORENT PALAYRET, KRISTEN MALONEY, PATRICK BUCQUET, and WENDY LAMONT,

Defendants.

**COMPLAINT AND JURY DEMAND**

Civil Action No.

Plaintiffs JOHN DOE ("Individual Plaintiff") and LOWICK LLC (together, "Plaintiffs"), by and through their attorneys, LEVY RATNER, P.C., allege as follows against Defendants Capgemini America, Inc. ("Capgemini"), Kavita Nar, Sandeep Kurne, Florent Palayret, Kristen Maloney, Patrick Bucquet, and Wendy Lamont (collectively, the "Individual Defendants" and, together with Capgemini, "Defendants"):

## NATURE OF THE ACTION

1. This action alleges discrimination, harassment, retaliation, interference with protected leave, unlawful wage deductions, and post-employment business interference arising from Defendants' treatment of Individual Plaintiff during and after his employment with Capgemini.

2. Individual Plaintiff is a gay man who resided in the City of New York at all relevant times.

3. Capgemini employed Individual Plaintiff from approximately May 2021 until his constructive discharge in February 2026.

4. During his employment, Defendants subjected Individual Plaintiff to discrimination and harassment because of sex, including sexual orientation and sex-based stereotyping.

5. After Individual Plaintiff complained internally, filed complaints of discrimination with the U.S. Equal Employment Opportunity Commission, requested and took protected leave, and filed a wage complaint, Defendants retaliated against him by, among other things, denying or delaying promotion, stripping duties, denying raises, lowering performance ratings, denying bonus compensation, limiting client opportunities, recoding leave-related pay, seizing wages, and making working conditions intolerable.

6. After Individual Plaintiff's employment ended, Defendants, including Capgemini and Wendy Lamont, continued retaliating by interfering with a consulting engagement performed through Plaintiff's single-member limited liability company, Lowick LLC.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. §§ 1331 and 1343 because this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA").

8. This Court has supplemental jurisdiction over Plaintiffs' state and city claims under 28 U.S.C. § 1367.

9. Individual Plaintiff timely filed administrative charges with the Equal Employment Opportunity Commission ("EEOC"), including charges filed on or about June 21, 2024, April 21, 2025, September 22, 2025, and June 11, 2026. He received notices of right to sue in June and July 2026, which are annexed hereto as Exhibit "A".

10. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the events giving rise to these claims occurred in this District.

11. This Court has personal jurisdiction over each Defendant because each transacted business in New York and/or committed acts in New York giving rise to the claims alleged herein.

## JURY DEMAND

12. Plaintiffs demand a trial by jury on all issues so triable.

## PARTIES

13. Individual Plaintiff is a natural person residing in New York, New York.

14. Plaintiff Lowick LLC is a Wyoming-domiciled single-member limited liability company wholly owned by Individual Plaintiff with its principal place of business and all operations in the City of New York, where consulting services relevant to this action were performed.

15. Defendant Capgemini America, Inc. is a corporation doing business in New York.

16. At all relevant times, Capgemini was Individual Plaintiff's employer within the meaning of Title VII, the FMLA, the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*. ("NYCHRL"), and the New York Labor Law ("NYLL").

17. Defendant Kavita Nar was, at all relevant times, a manager and/or senior employee of Capgemini who supervised or exercised authority over Individual Plaintiff's work and directly participated in the discriminatory and retaliatory conduct alleged herein.

18. Defendant Sandeep Kurne was, at all relevant times, a vice president and/or senior employee of Capgemini who exercised authority over Individual Plaintiff's work and directly participated in the discriminatory and retaliatory conduct alleged herein.

19. Defendant Florent Palayret was, at all relevant times, a manager of Capgemini who exercised authority over Individual Plaintiff's evaluations, promotion path, and working

conditions and directly participated in the discriminatory, retaliatory, and leave-related conduct alleged herein.

20. Defendant Kristen Maloney was, at all relevant times, an HR Director of Capgemini who exercised authority over Individual Plaintiff's complaints, leave-related issues, and working conditions and directly participated in the discriminatory, retaliatory, and wage-related conduct alleged herein.

21. Defendant Patrick Bucquet was, at all relevant times, a practice head and/or senior employee of Capgemini who exercised authority over Individual Plaintiff's working conditions and directly participated in the discriminatory and retaliatory conduct alleged herein.

22. Defendant Wendy Lamont was, at all relevant times, a vice president, account executive, and/or senior employee of Capgemini who exercised authority over Individual Plaintiff's assignments and directly participated in the discriminatory, retaliatory, and post-employment interference conduct alleged herein.

23. Upon information and belief, each Individual Defendant acted as an agent, employee, and/or managerial representative of Capgemini and personally participated in, directed, condoned, and/or aided and abetted the unlawful conduct alleged herein.

## STATEMENT OF FACTS

24. Individual Plaintiff was hired by Capgemini in approximately May 2021 as a Senior Consultant, Grade C, although he was qualified for an Engagement Manager, Grade D, role and performed Engagement Manager-level work. He was recognized as a strong performer and nominated for promotion.

25. Shortly after being assigned to work under Kavita Nar, Individual Plaintiff was subjected to homophobic and sex-based harassment, including the pejorative use of the word "gay," to dismiss work or professional conduct, as well as public humiliation.

26. Individual Plaintiff complained internally in 2021 and again in 2022 and 2024. Following his 2021 complaint, Capgemini reassigned Individual Plaintiff away from a project managed directly by Nar; however, that complaint served as the direct trigger for an escalating pattern of retaliation. Despite the reassignment, Nar continued to exercise significant influence over Individual Plaintiff's work, ratings, and standing within the practice group, and she persisted in discriminatory and retaliatory conduct in response to the internal complaint. Capgemini, including Kristen Maloney and Patrick Bucquet, failed to take adequate remedial action to stop Nar's continued misconduct and instead allowed the retaliatory treatment to continue and intensify.

27. Defendant Nar then continued participating in adverse treatment, including pushing for poor ratings, falsely blaming Individual Plaintiff for errors outside his scope, falsely attacking his performance on client work, and publicly humiliating him.

28. After Nar and Bucquet assumed greater control over Individual Plaintiff's practice group, Capgemini denied or delayed Individual Plaintiff's advancement and subjected him to other adverse actions, including stripping responsibilities and stalling his promotion for reasons untethered to performance.

29. In January 2024, Nar publicly humiliated Individual Plaintiff during a presentation. When he complained, Bucquet was dismissive, and Maloney and Bucquet reframed the issue as an interpersonal conflict, blamed Individual Plaintiff, and indicated he could be demoted.

30. In April 2024, Florent Palayret used Individual Plaintiff's review to direct him to improve his relationship with Nar rather than address the harassment. Capgemini then denied Individual Plaintiff a raise despite his documented performance.

31. On June 21 2024, Individual Plaintiff filed an EEOC charge 520-2024-02633 alleging discrimination, harassment, hostile working conditions, and retaliation for engaging in protected activity. After the EEOC charge was provided to Defendants, they intensified their retaliatory treatment against Individual Plaintiff.

32. In late 2024, Capgemini and Palayret excluded Individual Plaintiff from the promised mid-year review process, issued him an unjustifiably low skills rating, and offered shifting explanations for that rating. A director who advocated for a higher rating told him she was overruled despite his positive client feedback and high performance.

33. In 2025, Capgemini and the Individual Defendants continued retaliating against Individual Plaintiff by denying him a raise, imposing a unique business-development requirement not applied to other employees in his grade, removing him from the HSBC engagement on false grounds, and blocking promotion using shifting and pretextual explanations.

34. Sandeep Kurne directly participated in false blame and in removing Individual Plaintiff from the HSBC engagement based on falsehoods. Kurne also expressed "concerns" about Individual Plaintiff's "personal life," which Individual Plaintiff reasonably understood as a reference to his sexual orientation.

35. Wendy Lamont directly participated in sex-based stereotyping by threatening, in September 2025, that if Individual Plaintiff wore "pink every day" he would be removed from a billable assignment. This comment was made after Individual Plaintiff had notified Lamont about discrimination and retaliation he had experienced at Capgemini.

36. Individual Plaintiff filed additional EEOC charges in April 2025 (Charge No. 520-2025-04924 alleging, inter alia, the retaliatory pay freeze and disparate performance standards) and September 2025 (Charge No. 520-2025-08944 alleging, inter alia, retaliatory denial of promotion).

37. As a result of Defendants' conduct, Individual Plaintiff's health was affected, and on his physician's advice he requested and took short-term disability and FMLA leave from Tuesday, September 30 to Monday November 3, 2025.

38. Capgemini's policy, provided to Individual Plaintiff by Defendant Kristen Maloney, required that accrued sick leave and vacation time be used and exhausted during the short-term disability elimination period to maintain salary continuity.

39. After Individual Plaintiff returned from leave, Capgemini, acting through and with the participation of Maloney and Palayret, asserted that he had been overpaid during the elimination period, retroactively recoded paid leave as unpaid or non-payable, attempted to reverse funds from his personal checking account, and later withheld earned wages without Individual Plaintiff's authorization.

40. Individual Plaintiff disputed Defendant's conduct in paragraph 39 above and subsequently filed a wage complaint with the New York State Department of Labor on December 1, 2025, Case Reference: LCM25014659, of which Capgemini and Maloney were aware.

41. In early 2026, Capgemini, Maloney, and Palayret downgraded Individual Plaintiff's performance ratings across multiple categories, relying in part on supposed reduced "engagement" and "visibility" during a period that included his approved FMLA leave.

42. Discriminatory animus tainted the rationale used against Individual Plaintiff, but Defendants did not correct the ratings. Defendants acknowledged that the lowered ratings would likely result in no bonus payout.

43. Through the cumulative discriminatory and retaliatory conduct described above, Defendants made Individual Plaintiff's working conditions intolerable and constructively discharged him on February 6. Defendant Capgemini was notified of the separation by Plaintiffs' counsel on February 10, 2026.

44. After Individual Plaintiff's employment ended, he continued to perform consulting work through Lowick LLC, under a contract with NR Consulting, in support of a multi-year compliance engagement for Barclays.

45. Individual Plaintiff has never executed any non-competition agreement or other restrictive covenant that would preclude his engagement with NR Consulting or preclude his work for Barclays.

46. Capgemini and Lamont learned of Lowick LLC's engagement in the evening of February 10, 2026, when Individual Plaintiff encountered Lamont and directly informed her that he no longer worked for Capgemini. Notwithstanding that direct and unequivocal personal notice, upon information and belief, Capgemini, including through Lamont and other senior personnel, contacted Barclays, falsely represented that Individual Plaintiff remained a Capgemini employee and/or was subject to non-competition or other restrictive covenant obligations, and actively sought the cancellation of Lowick LLC's engagement on those grounds. As a result of those misrepresentations, Pernendu Mukherjee of IBM subsequently inquired of Individual Plaintiff whether he had obtained a release form from Capgemini.

47. As a direct result of Capgemini's and Lamont's conduct, the contract between Lowick LLC and NR Consulting was terminated, causing substantial economic loss to Lowick LLC, commensurate economic harm to Individual Plaintiff, as well as severe reputational harm to both Lowick LLC and Individual Plaintiff.

48. On June 11, 2026, Individual Plaintiff filed EEOC Charge No. 520-2026-06457 alleging, inter alia, discriminatory and retaliatory (a) failure to pay sick leave during the short-term disability elimination period in October 2025, (b) downgrade of performance ratings in January 2026, resulting in loss of a bonus for 2025, (c) constructive discharge in February 2026, and (d) active interference with professional contract and harm to professional earnings and reputation in February 2026, when Defendants caused the termination of Lowick's contract with third parties.

<u>Defendant-Specific Conduct</u>

49. Defendant Kavita Nar directly harassed and discriminated against Individual Plaintiff. In 2021, Nar engaged in the pejorative use of the word "gay" to dismiss Individual Plaintiff's professional conduct. Following Individual Plaintiff's 2021 internal complaint and the firm's subsequent decision to reassign him away from her project, Nar's conduct shifted into an escalating pattern of retaliation. Using her continued influence over his professional standing, Nar retaliated against Individual Plaintiff for his complaint and the firm's remedial action by publicly shaming him in team settings, pushing for him to receive a below-expectations rating, falsely blaming him for work outside his scope, falsely attacking his performance on client work, and publicly humiliating him during a January 2024 presentation.

50. Defendant Sandeep Kurne directly participated in adverse treatment against Individual Plaintiff. Kurne joined in falsely blaming Individual Plaintiff for errors outside his scope, later removed him from the HSBC engagement citing concerns about his personal life as the

justification for the removal. Individual Plaintiff reasonably understood this as a reference to his sexual orientation. This stated justification was demonstrably pretextual, as Kurne also attempted to justify the removal based on claims regarding performance that were factually impossible given the timing of the work.

51. Defendant Florent Palayret directly participated in discriminatory, retaliatory, and leave-related conduct. Palayret stalled Individual Plaintiff's promotion, used his annual review to instruct him to improve his relationship with Nar rather than address the harassment, participated in excluding him from the promised mid-year review process, issued or defended an unjustifiably low skills rating using shifting explanations, represented that Individual Plaintiff had a good promotion case and later participated in blocking that promotion, and then downgraded his ratings in 2026 based in part on supposed reduced engagement and visibility during a period that included approved leave.

52. Defendant Kristen Maloney directly participated in discriminatory, retaliatory, leave-related, and wage-related conduct. Maloney received Human Resources complaints about Nar's conduct and did not remedy it; in January 2024 she joined in blaming Individual Plaintiff for the conflict with Nar and suggested that he could be demoted; she was involved in the leave and elimination-period pay issues; and she later participated in or ratified the leave-tainted rating and compensation decisions, including decisions that would likely result in no bonus payout.

53. Defendant Patrick Bucquet directly participated in discriminatory and retaliatory conduct. After assuming greater authority in Individual Plaintiff's practice group, Bucquet dismissed Individual Plaintiff's complaints about Nar, failed to take corrective action, and joined in reframing the documented history of harassment as a mere "personality incompatibility" for which Individual Plaintiff was purportedly at fault. Bucquet further indicated that the situation

could result in demotion and brushed aside Nar's homophobic and sex-based harassment as a non-actionable dispute.

54. Defendant Wendy Lamont directly participated in discriminatory, retaliatory, and post-employment interference conduct. Lamont threatened that if Individual Plaintiff wore "pink every day" he would be removed from a billable assignment, questioned him after his employment ended about the details of his new Barclays-related work, including deliverables, stakeholders, and project scope, and then used that information to undermine Plaintiffs' Barclays-related business opportunity.

55. Each Individual Defendant personally participated in one or more of the acts alleged herein, acted with knowledge of Individual Plaintiff's protected activity and/or protected status, and authorized, directed, carried out, condoned, ratified, and/or aided and abetted unlawful discrimination, harassment, retaliation, and related misconduct.

56. At all relevant times, the acts of the Individual Defendants were taken within the scope of their employment and agency for Capgemini and were attributable to Capgemini.

## FIRST CAUSE OF ACTION

(Title VII Sex Discrimination and Hostile Work Environment)

(By Individual Plaintiff Against Capgemini Only)

57. Individual Plaintiff repeats and realleges Paragraphs 1 through 56.

58. Individual Plaintiff is a member of a protected class under Title VII as a gay man.

59. Capgemini discriminated against him because of sex, including sexual orientation and sex-based stereotyping, by subjecting him to homophobic harassment, public humiliation, denial or delay of promotion, denial of raises, lowered ratings, denial of bonus compensation, limitation of client opportunities, and constructive discharge.

60. Capgemini also subjected Individual Plaintiff to unwelcome harassment because of sex that was severe or pervasive enough to alter the terms and conditions of employment and create an abusive working environment.

61. As a direct and proximate result, Individual Plaintiff suffered damages.

**SECOND CAUSE OF ACTION**

(Title VII Retaliation)

(By Individual Plaintiff Against Capgemini Only)

62. Individual Plaintiff repeats and realleges Paragraphs 1 through 56.

63. Individual Plaintiff engaged in protected activity under Title VII by complaining internally about discrimination and harassment and by filing EEOC charges.

64. Capgemini knew of that protected activity.

65. Capgemini retaliated against Individual Plaintiff by, among other things, denying or delaying promotion, stripping duties, lowering evaluations, denying raises and bonus compensation, imposing unique advancement barriers, removing him from work, constructively discharging him, and interfering with his post-employment business opportunity.

66. As a direct and proximate result, Individual Plaintiff suffered damages.

**THIRD CAUSE OF ACTION**

(FMLA Interference)

(By Individual Plaintiff Against Capgemini, Maloney, and Palayret)

67. Individual Plaintiff repeats and realleges Paragraphs 1 through 56.

68. Individual Plaintiff was eligible for FMLA leave, Capgemini was covered by the FMLA, and Individual Plaintiff requested and took protected leave for a serious health condition.

69. Maloney and Palayret acted directly or indirectly in Capgemini's interest with respect to Individual Plaintiff's leave-related rights, return-to-work conditions, evaluations, and compensation.

70. Capgemini, Maloney, and Palayret interfered with Individual Plaintiff's FMLA rights by using leave-related absence against him, penalizing him for reduced visibility during a period that included approved leave, and recoding pay associated with leave in a manner inconsistent with approved leave and Capgemini's policy.

71. As a direct and proximate result, Individual Plaintiff suffered damages.

**FOURTH CAUSE OF ACTION**

(FMLA Retaliation)

(By Individual Plaintiff Against Capgemini, Maloney, and Palayret)

72. Individual Plaintiff repeats and realleges Paragraphs 1 through 56.

73. Individual Plaintiff engaged in protected activity under the FMLA by requesting and taking protected leave.

74. Capgemini, Maloney, and Palayret knew of that protected activity.

75. Capgemini, Maloney, and Palayret retaliated against Individual Plaintiff for exercising FMLA rights by recoding leave-related time as unpaid or non-payable, seeking reversal of funds, withholding wages, lowering evaluations, reducing bonus eligibility, and otherwise treating his leave as a negative factor.

76. As a direct and proximate result, Individual Plaintiff suffered damages.

**FIFTH CAUSE OF ACTION**

(NYSHRL Discrimination, Harassment, Hostile Work Environment, and Aiding and Abetting)

(By Individual Plaintiff Against Capgemini and All Individual Defendants)

77. Individual Plaintiff repeats and realleges Paragraphs 1 through 56.

78. Defendants discriminated against Individual Plaintiff in the terms, conditions, and privileges of employment because of sex, sexual orientation, and sex-based stereotyping, and subjected him to unlawful harassment and a hostile work environment.

79. Each Individual Defendant actually participated in the discriminatory and/or harassing conduct and/or aided and abetted such conduct.

80. As a direct and proximate result, Individual Plaintiff suffered damages.

**SIXTH CAUSE OF ACTION**

(NYSHRL Retaliation and Aiding and Abetting Retaliation)

(By Individual Plaintiff Against Capgemini and All Individual Defendants)

81. Individual Plaintiff repeats and realleges Paragraphs 1 through 56.

82. Individual Plaintiff engaged in protected activity under the NYSHRL.

83. Defendants retaliated against Individual Plaintiff, including through post-employment conduct, because of that protected activity.

84. Each Individual Defendant actually participated in the retaliatory conduct and/or aided and abetted such conduct.

85. As a direct and proximate result, Individual Plaintiff suffered damages.

**SEVENTH CAUSE OF ACTION**

(NYCHRL Discrimination, Harassment, and Aiding and Abetting)

(By Individual Plaintiff Against Capgemini and All Individual Defendants)

86. Individual Plaintiff repeats and realleges Paragraphs 1 through 56.

87. Defendants discriminated against Individual Plaintiff and treated him less well because of sex, sexual orientation, and sex-based stereotyping.

88. The conduct alleged was more than petty slights or trivial inconveniences.

89. Each Individual Defendant actually participated in the discriminatory and/or harassing conduct and/or aided and abetted such conduct.

90. As a direct and proximate result, Individual Plaintiff suffered damages.

**EIGHTH CAUSE OF ACTION**

(NYCHRL Retaliation and Aiding and Abetting)

(By Individual Plaintiff Against Capgemini and All Individual Defendants)

91. Individual Plaintiff repeats and realleges Paragraphs 1 through 56.

92. Individual Plaintiff engaged in protected activity under the NYCHRL, including internal complaints, EEOC charges, leave-related complaints, and a wage complaint.

93. Defendants retaliated against Individual Plaintiff by conduct reasonably likely to deter a person from engaging in protected activity, including post-employment interference with his professional opportunity.

94. Each Individual Defendant actually participated in the retaliatory conduct and/or aided and abetted such conduct.

95. As a direct and proximate result, Individual Plaintiff suffered damages.

**NINTH CAUSE OF ACTION**

(Unlawful Wage Deductions / Unlawful Withholding of Wages)

(N.Y. Labor Law §§ 193 and 198)

(By Individual Plaintiff Against Capgemini and Maloney)

96. Individual Plaintiff repeats and realleges Paragraphs 1 through 56.

97. Capgemini, acting with the participation of Maloney, retroactively reclassified paid leave as unpaid or non-payable, sought reversal of compensation already paid, and later withheld funds from Individual Plaintiff without lawful authorization.

98. As a direct and proximate result, Individual Plaintiff suffered loss of wages and is entitled to appropriate statutory relief.

**TENTH CAUSE OF ACTION**

(NYLL Retaliation)

(N.Y. Labor Law § 215)

(By Individual Plaintiff Against Capgemini and Maloney)

99. Individual Plaintiff repeats and realleges Paragraphs 1 through 56.

100. Individual Plaintiff engaged in protected activity under the NYLL by complaining about wage practices and filing a wage complaint with the New York State Department of Labor.

101. Capgemini and Maloney knew of that protected activity.

102. Capgemini and Maloney retaliated against Individual Plaintiff because of that protected activity.

103. As a direct and proximate result, Individual Plaintiff suffered damages.

**ELEVENTH CAUSE OF ACTION**

(Tortious Interference with Contract)

(By Lowick LLC Against Capgemini and Lamont)

104. Lowick LLC repeats and realleges Paragraphs 1 through 56.

105. Lowick LLC had a valid contract with NR Consulting under which Lowick LLC would provide consulting services for Barclays on an engagement managed by IBM.

106. Capgemini and Lamont knew of that contract.

107. Capgemini and Lamont intentionally procured the termination and breach of that contract by wrongful means, including false statements concerning Individual Plaintiff's employment status and alleged conflict.

108. The contract was terminated and breached, causing damages to Lowick LLC .

**TWELFTH CAUSE OF ACTION**

(Tortious Interference with Prospective Business Relations)

(By Lowick LLC Against Capgemini and Lamont, Pleaded in the Alternative)

109. Lowick LLC repeats and realleges Paragraphs 1 through 56.

110. Lowick LLC had a business relationship and reasonable expectancy of continued economic benefit arising from its Barclays-related engagement.

111. Capgemini and Lamont knew of that business relationship and expectancy.

112. Capgemini and Lamont intentionally interfered with that relationship by wrongful means, including false statements and misuse of information obtained from Individual Plaintiff.

113. Defendants' interference caused termination of the Barclays-related opportunity and substantial economic loss to Lowick LLC .

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and grant the following relief:

A. Declaration that Defendants violated Title VII, the FMLA, the NYSHRL, the NYCHRL, the NYLL, and New York common law;

B. Equitable relief in the form of back pay, lost bonuses, lost benefits, and all other past economic losses for Individual Plaintiff;

C. Equitable relief in the form of front pay and other future economic damages for Individual Plaintiff in lieu of reinstatement;

D. Compensatory damages for lost contract revenue, lost business opportunity, and consequential economic losses to Lowick LLC ;

E. Compensatory damages for emotional distress, humiliation, pain and suffering, and reputational harm for Individual Plaintiff;

F. Liquidated damages to the fullest extent permitted by the FMLA and NYLL for Individual Plaintiff;

G. Punitive damages to the fullest extent permitted by law;

H. Pre- and post-judgment interest;

I. Attorneys' fees and costs, including expert fees and costs; and

J. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 19, 2026

Respectfully submitted,

LEVY RATNER, P.C.

Dana Lossia

Dana Lossia
80 Eighth Avenue, 8th Floor
New York, New York 10011
(212) 627-8100
(212) 627-8182 (fax)
dlossia@levyratner.com

*Attorneys for Plaintiffs John Doe, Lowick LLC*