UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE and LOWICK LLC,

Plaintiffs,

v.

CAPGEMINI AMERICA, INC.; KAVITA NAR; SANDEEP KURNE; FLORENT PALAYRET; KRISTEN MALONEY; PATRICK BUCQUET; and WENDY LAMONT,

Defendants.

Civil Action No. 1:26-cv-07074

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EX PARTE MOTION TO PROCEED UNDER A PSEUDONYM**

## PRELIMINARY STATEMENT

Individual Plaintiff JOHN DOE ("Individual Plaintiff") respectfully submits this memorandum of law in support of his motion for leave to proceed under a pseudonym in this action.

This case arises from a sustained campaign of discrimination, harassment, and retaliation on the basis of sex and sexual orientation, followed by post-employment tortious interference and retaliatory conduct that has already cost Individual Plaintiff and his co-plaintiff Lowick LLC approximately $600,000 in projected contract revenue. The individual and employment claims are inextricably intertwined with facts that are among the most sensitive the law recognizes: Individual Plaintiff's sexual orientation, a diagnosed psychiatric condition, and a course of treatment involving prescription benzodiazepine medication—information that has not been publicly disclosed and whose exposure would cause concrete, irreversible, and ongoing professional harm



11610984_2

in a highly specialized consulting industry that relies on automated vendor-screening systems with no capacity for contextual judgment.

The Second Circuit and courts in this District have developed a framework for evaluating requests to proceed pseudonymously. Applied to the facts of this case, that framework compels the relief Individual Plaintiff seeks. Individual Plaintiff does not seek anonymity from the Defendants—they know precisely who he is—but rather from the permanent, algorithmic associative harm that a public court record would inflict. The harms at issue are not speculative: they have already begun to materialize in the form of a terminated consulting contract, an unemployment benefits proceeding that Capgemini ultimately abandoned by failing to appear, and the ongoing professional exposure that the Individual Plaintiff's accompanying Declaration describes in greater detail.

**STATEMENT OF FACTS**

The facts supporting this motion are set forth in the accompanying Declaration of Individual Plaintiff ("Idv. Pl. Decl."). The following summary highlights the facts most directly relevant to the pseudonymity analysis.

Plaintiff is a 37-year-old financial-services consultant with more than ten years of experience advising the capital markets divisions of tier-one global banking institutions, including Barclays Capital, Bank of America Merrill Lynch, Morgan Stanley, and Citigroup. Idv. Pl. Decl. ¶ 2. He holds a post-graduate management degree from Columbia University and, during the COVID-19 pandemic, advised the Federal Reserve System in connection with a commercial credit facility. *Id.* He continues to perform consulting work through Lowick LLC, a Wyoming limited liability company of which he is the sole managing member. Idv.. Pl. Decl. ¶ 4.

Plaintiff was employed by Capgemini America, Inc. ("Capgemini") from May 2021 until his constructive discharge in early 2026. Idv. Pl. Decl. ¶ 4. This action arises from discrimination, harassment, and retaliation on the basis of his sex and sexual orientation, including a statement by defendant Sandeep Kurne expressing "concerns about [Plaintiff's] personal life" in a context Plaintiff understood to reference his sexual orientation; a statement by defendant Wendy Lamont threatening removal from a client assignment if Plaintiff "wear[s] pink every day"; and a statement by Capgemini Vice President Charles Daly that certain clients "will not want to work with you" based on assumptions tied to Plaintiff's sexual orientation. Idv. Pl. Decl. ¶ 9. Plaintiff's claims include violations of Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act ("FMLA"), the New York State Human Rights Law, the New York City Human Rights Law, and New York Labor Law §§ 193, 198, and 215; Lowick LLC asserts tortious interference with contract and prospective business relations. Idv. Pl. Decl. ¶ 5.

Capgemini's retaliation did not cease upon Plaintiff's departure. In February 2026, defendant Lamont confronted Plaintiff on a Barclays commuter shuttle and, notwithstanding his direct, unequivocal statement that he no longer worked for Capgemini, caused Capgemini to contact Barclays and falsely represent that Plaintiff remained a Capgemini employee subject to non-compete obligations—none of which exist. Idv. Pl. Decl. ¶ 11. The direct result was the termination of the contract between Lowick LLC and NR Consulting (Delhi, India), with a projected revenue loss of approximately $600,000. Idv. Pl. Decl. ¶ 12. Capgemini subsequently litigated Plaintiff's unemployment insurance claim before the New York State Department of Labor, asserting a "Conflict of Interest and Dual Employment" policy violation; the Department found in Plaintiff's favor on March 11, 2026, expressly finding that Capgemini had not produced

documentation of any non-compete or dual-employment violation. Idv. Pl. Decl. ¶ 13. Capgemini appealed and requested a hearing, then failed to appear on July 13, 2026. *Id.*

Plaintiff was diagnosed during his employment with Generalized Anxiety Disorder and was approved for FMLA leave from September 30 through November 3, 2025. His treating clinical psychologist documented that Plaintiff's condition is directly related to environmental and interpersonal issues in his workplace. Plaintiff's ongoing treatment includes cognitive-behavioral therapy and prescribed Xanax (alprazolam), a Schedule IV benzodiazepine, to address panic attacks, sleep disturbances, and impaired executive functioning. Idv. Pl. Decl. ¶ 24.

The EEOC issued Notices of Right to Sue on Plaintiff's charges on June 10, 2026 and July 1, 2026. Idv. Pl. Decl. ¶ 8. Title VII requires suit within 90 days of receipt of those notices.

## ARGUMENT

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 10(a) requires that a complaint "name all the parties." This requirement serves the public's interest in knowing who uses the courts and ensures that defendants can meaningfully respond to claims against them. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008). Rule 10(a) is not, however, an absolute bar. Courts have long recognized that "a party may be permitted to proceed anonymously" where the party's privacy interest "substantially outweighs the customary and constitutionally embedded presumption of openness in judicial proceedings." *Id.* at 189 (internal quotation marks omitted).

The Second Circuit in *Sealed Plaintiff* articulated a non-exhaustive, ten-factor balancing test for pseudonymity motions in this Circuit. *Id.* at 189–90. The court identified the following factors:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak privacy interest; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190. No single factor is dispositive; the court weighs the constellation of circumstances presented. *Id.*

It is appropriate to apply *Sealed Plaintiff* to grant pseudonymity in this employment discrimination matter involving sexual orientation, gender identity, and psychiatric conditions. In *Doe v. United Servs. Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y. 1988), the court recognized the sensitive nature of sexual orientation information. Likewise, in *Doe v. Cigna Health and Life Ins. Co.*, No. 25-CV-7021 (DEH) (BCM), 2026 WL 21823 (S.D.N.Y. Jan. 2, 2026), the court recognized that psychiatric history is considered highly sensitive and may warrant pseudonymity.

## II. THE *SEALED PLAINTIFF* FACTORS WEIGH STRONGLY IN FAVOR OF PSEUDONYMITY

<u>Factor 1: The Litigation Involves Highly Sensitive and Personal Matters</u>

This matter concerns the Individual Plaintiff's sexual orientation and psychiatric history, which are among the most sensitive categories of personal information that can appear on a public docket.

Sexual orientation is precisely the kind of information that warrants anonymity. *See Doe v. United Servs. Life Ins. Co.*, 123 F.R.D. at 439 (citing cases). Disclosure is irreversible, and the sensitivity is heightened where, as here, the plaintiff's sexual orientation is not merely a background fact but the central, recurring subject of the alleged misconduct. Idv. Pl. Decl. ¶ 9. Named defendant Kurne's expression of "concerns about [Plaintiff's] personal life," defendant Lamont's threat tied to perceived gender-nonconformity in dress, and Vice President Daly's statement that clients "will not want to work with you" based on assumptions about sexual orientation are not incidental references. They are the gravamen of the harassment claim. The litigation will necessarily require the public docket to contain detailed, specific evidence about Plaintiff's sexual orientation and its role in his workplace. *Id.*

Plaintiff's psychiatric diagnosis also supports pseudonymity. *Doe v. Cigna Health and Life Ins. Co.*, No. 25-CV-7021 (DEH) (BCM), 2026 WL 21823, * 3. Here, Plaintiff received a clinical diagnosis of Generalized Anxiety Disorder, is prescribed alprazolam (Xanax) to manage panic attacks and executive-function impairment, and his treating clinician has documented his condition. Idv. Pl. Decl. ¶ 24. Psychiatric diagnoses, treatment records, and prescription medication histories are categorically sensitive. Their appearance on a permanent public docket—searchable by automated systems without any contextual framing—would cause distinct, cognizable harm. Plaintiff presents a specific diagnosis, a documented FMLA leave period with defined start and end dates, an identified treating clinician, a named Schedule IV controlled substance, and, in due course will present a clinician's written records of treatment. Idv. Pl. Decl. ¶ 24. This is precisely the kind of particularized medical showing that supports the first *Sealed Plaintiff* factor.

<u>Factor 2: Identification Poses Risk of Retaliatory Harm</u>

The risk-of-harm inquiry under Factor 2 encompasses both retaliatory harm and mental harm to the plaintiff. *Sealed Plaintiff*, 537 F.3d at 190. Both are present here.

As to mental harm, Plaintiff's treating psychologist would be willing to provide his professional opinion that public disclosure of Plaintiff's identity in connection with this litigation would likely exacerbate his clinical symptoms, including panic attacks triggered by the same workplace events that this litigation will require him to relive. Idv. Pl. Decl. ¶ 24. This is not a generalized claim that litigation is stressful. It is a clinician's professional judgment that public re-exposure to the stimuli that caused the initial harm will cause clinical regression. That showing satisfies Factor 2.

As to retaliatory harm, Capgemini's post-employment conduct establishes that the risk of further retaliation is not speculative. Capgemini already took the affirmative step of contacting Barclays to misrepresent Plaintiff's employment status and contractual obligations after he left the company—a step that resulted in the termination of a $600,000 consulting contract. Idv. Pl. Decl. ¶¶ 11–12. It then opposed his unemployment benefits before the Department of Labor, losing on the merits before defaulting on its own appeal. Idv. Pl. Decl. ¶ 13. Courts in this Circuit have found that a pattern of post-employment retaliatory conduct lends credibility to a plaintiff's claim that further harm from public disclosure is non-speculative. *Cf. Roe*, 2024 WL 4404186, at *3 (distinguishing cases where harm from disclosure is speculative from those where specific, concrete prior harm is documented).

<u>Factors 3 and 4: Identification Presents Severe, Recurring Harms to Which Plaintiff Is Particularly Vulnerable</u>

Factors 3 and 4 together ask about the nature, severity, and plaintiff-specific character of the anticipated harm from disclosure. The harms Plaintiff faces are severe, multidimensional,

structurally recurring, and specific to his professional situation in ways that distinguish this case from a typical employment plaintiff.

The financial-services consulting industry, unlike most employment contexts, subjects every consultant to fresh, federally mandated background screening at the outset of each new engagement. Idv. Pl. Decl. ¶ 15. Federal banking regulators—including the OCC and the Federal Reserve—require financial institutions to conduct rigorous, ongoing third-party risk management and continuous background screening for all vendors and contractors with access to critical systems. *See* Interagency Guidance on Third-Party Relationships: Risk Management, 88 Fed. Reg. 37920 (June 9, 2023), cited in Idv. Pl. Decl. ¶ 15 n.1. This is not a discretionary preference; it is a regulatory requirement. *Id.*

Vendor-screening systems increasingly operate through automated algorithms and large language models that scrape public court dockets. Idv. Pl. Decl. ¶ 20. These systems flag a consultant whose name appears in litigation as a "litigation risk" without regard to the nature of the litigation, its outcome, or whether the named individual was the victim rather than the perpetrator of wrongdoing. *Id.* Once embedded in those systems, the association is essentially permanent: subsequent sealing of the record or a favorable verdict cannot reliably cause the models to update, because they train on historical internet data that cannot be recalled. *Id.*

Plaintiff has personally observed the real-world operation of this mechanism. When he searched for the names of two other Capgemini plaintiffs—Kristen Plunkett and Ashley Steinberg—combined with the word "Capgemini," court-record-aggregator websites and AI-generated search summaries dominated the results, surfacing their litigation histories ahead of any professional accomplishments. Idv. Pl. Decl. ¶ 19. Notably, the Steinberg matter was compelled

to arbitration and never reached the merits, yet the court record persists prominently in search results. *Id.*

Courts are beginning to recognize the exclusionary power of automated screening systems in the employment context. *See Mobley v. Workday, Inc.*, 740 F. Supp. 3d 796 (N.D. Cal. 2024) (allowing claims to proceed on the theory that AI screening software operates as an employment agency capable of automatically rejecting candidates), cited in Idv. Pl. Decl. ¶ 20 n.7. The harm Plaintiff describes is not theoretical; it is the operational reality of how tier-one banking clients evaluate consultant eligibility.

Because each new consulting engagement triggers an independent round of background screening, the harm is not a one-time exposure. It is a recurring structural risk that will materialize at every new client engagement for the remainder of Plaintiff's career. Idv. Pl. Decl. ¶ 15. This distinguishes his situation from an employee in a traditional employment relationship, where a single background check might precede an indefinite engagement. For Plaintiff, the harm will recur with each new project, which may be as short as a few months. *Id.*

There is also a real risk that Plaintiff could become subject to criminal proceedings internationally. Financial-services consulting of the kind Plaintiff performs routinely involves engagement with institutions and personnel connected to the Middle East. Idv. Pl. Decl. ¶ 16. As of 2026, sixty-five (65) United Nations member states criminalize consensual same-sex conduct, including Qatar, the United Arab Emirates, and Saudi Arabia—the latter two carrying the possibility of capital punishment.[1] Idv. Pl. Decl. ¶ 16 nn. 2-3. Courts have recognized international

[1] *See Pride Month: New ILGA World Data and Maps on Laws Affecting LGBTI People Globally*, ILGA WORLD (June 1, 2026), available at https://ilga.org/news/pride-month-2026-lgbti-maps-data/

criminalization as a factor supporting pseudonymity where the plaintiff's professional activities require engagement with those jurisdictions. Plaintiff has already performed consulting work involving Qatar-based counterparties in connection with Barclays Capital engagements. Idv. Pl. Decl. ¶ 3. The risk is occupational, not personal: it is tied to the ordinary, ongoing requirements of his profession.

India is the single largest non-U.S. jurisdiction for Plaintiff's business dealings, including the NR Consulting engagement at issue in the tortious interference claim. Idv. Pl. Decl. ¶ 17. India decriminalized consensual same-sex conduct in 2018, and Plaintiff does not assert criminal-prosecution risk there. He does, however, document a distinct harm: persistent, documented social and professional stigma that continues to result in discrimination, harassment, and economic exclusion for LGBT professionals in India, notwithstanding decriminalization. *See* Soumi Rai, Shalini S. Gopalkrishnan, *The Economic Cost of Stereotypes, Stigma, and the Exclusion of LGBTQ Workforce: The Indian Context*, 63 Productivity 428 (2023), cited in Idv. Pl. Decl. ¶ 18 n.6. India's Supreme Court declined in 2023 to extend legal recognition to same-sex marriages, *Supriya Chakraborty & Anr. v. Union of India*, 2023 INSC 920 (Supreme Court of India), and India's employment-discrimination statute does not extend protection to sexual orientation, *see* The Transgender Persons (Protection of Rights) Act 2019, cited in Idv. Pl. Decl. ¶¶ 17–18 nn. 4-5. Any harm arising from disclosure in that market would be entirely beyond the remedial reach of this Court's protective orders. Idv. Pl. Decl. ¶ 18.

Factor 4 calls for attention to the plaintiff's individual circumstances. Plaintiff is a sole practitioner operating through a single-member LLC in a specialized consulting niche where the number of tier-one financial institutions large enough to retain in-house engineering capabilities in his specialty is limited. Idv. Pl. Decl. ¶ 12. He has no employer, no HR department, and no non-

retaliation protections as a vendor. Idv. Pl. Decl. ¶ 15. His psychiatric condition, documented by a treating clinician as causally related to the same workplace events this litigation will relitigate, makes him clinically vulnerable to the psychological harm that public exposure will cause. Idv. Pl. Decl. ¶ 24. These factors compound each other: a sole-practitioner consultant with a psychiatric condition linked to this litigation, operating in an industry governed by algorithmic screening, faces harms qualitatively different from those facing a traditional employee.

Factor 5: The Suit Is Against Private Parties

The fifth *Sealed Plaintiff* factor asks whether the suit challenges government action. *Sealed Plaintiff*, 537 F.3d at 190. Courts have observed that the public interest in open proceedings is heightened when the government is a defendant, because citizens have a right to scrutinize the conduct of public institutions. *See, e.g., EW v. New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). This case involves only private-sector defendants—a multinational professional-services corporation and individual employees. The public's interest in scrutinizing the conduct of private parties, while real, is not as strong as it is when the government is accused of wrongdoing. This factor weighs in Plaintiff's favor.

Factor 6: Defendants Are Not Prejudiced

Pseudonymity on the public docket causes no prejudice to Capgemini's litigation position. The individual defendants, Capgemini's human resources personnel, and Capgemini's outside counsel—who has already prepared multiple position statements for the EEOC—are fully aware of Plaintiff's identity, his employment history, and the substance of the allegations. Idv. Pl. Decl. ¶ 26. Plaintiff is prepared to disclose his legal name to defendants, their counsel, and this Court under a standard confidentiality and protective order, and to participate fully in discovery, depositions, and trial preparation. *Id.* Pseudonymity on the public docket is categorically different

from concealing identity from the opposing party, and courts in this Circuit routinely distinguish the two. *See, e.g., Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 408 (S.D.N.Y. 2019) (noting that pseudonymity does not impair defendants' ability to conduct discovery where plaintiff agrees to disclose identity under protective order).

<u>Factor 7: Plaintiff's Identity Has Been Kept Confidential</u>

Plaintiff has consistently maintained strict control over disclosure of his sexual orientation throughout his professional life. He does not disclose it in international business settings, in dealings with colleagues from regions with different prevailing social norms, or when conducting business with foreign nationals in New York City—circumstances that arise routinely in his work for multinational clients. Idv. Pl. Decl. ¶ 21. A CEO-level executive explicitly advised him to conceal his orientation on a domestic business trip to Texas in 2015; he has since applied the same protective approach on subsequent trips to Kansas, Missouri, and South Carolina. Idv. Pl. Decl. ¶ 22. He has maintained an unidentifiable pseudonym on his only non-professional social media account since 2010 to prevent any inference about his personal life from his digital footprint. Idv. Pl. Decl. ¶ 23.

This is precisely the factual predicate *Sealed Plaintiff* Factor 7 is designed to capture. A plaintiff who has already made the sensitive information broadly public cannot credibly claim that a court filing would cause marginal additional harm. Here, Plaintiff has taken documented, sustained, and affirmative steps to maintain confidentiality across professional, social, and digital contexts. The court filing, absent pseudonymity, would represent not the continuation of a public status but a forced, involuntary outing on a permanent federal docket. Courts in this Circuit treat such circumstances as weighing heavily in favor of anonymity. *See Doe v. Frank*, 951 F.2d 320

(11th Cir. 1992) (recognized in Second Circuit opinions for the principle that plaintiffs who have kept sensitive information private have a stronger claim to pseudonymity).

Factor 8: The Public's Interest in Disclosure Is Minimal

Factor 8 asks whether the public's interest in the litigation is advanced by requiring disclosure of Plaintiff's identity. *Sealed Plaintiff*, 537 F.3d at 190. It is not. The claims in this case—Title VII sexual orientation discrimination, FMLA interference and retaliation, NYSHRL and NYCHRL claims, and tortious interference—present legal issues of public significance that are fully comprehensible and fully litigable without the public knowing Plaintiff's name. The legal questions are not dependent on the identity of the particular plaintiff; they turn on the defendants' conduct.

Moreover, Lowick LLC is proceeding as a fully named co-plaintiff on the public docket. The public will have an identifiable corporate party through which to track the litigation, understand the commercial and legal issues, and observe the judicial proceedings. Idv. Pl. Decl. ¶ 26. Requiring disclosure of Plaintiff's personal name adds nothing to public understanding of the substantive dispute. It adds only the capacity to link the litigation to his sexual orientation and psychiatric history—information whose disclosure serves no public purpose and causes severe, irreversible private harm.

Factor 9: There Is No Atypically Weak Privacy Interest

Factor 9 asks whether, because the case presents purely legal questions or for some other reason, the plaintiff's privacy interest is unusually weak. *Sealed Plaintiff*, 537 F.3d at 190. The opposite is true here. The privacy interests at stake are among the strongest the law recognizes: sexual orientation, psychiatric diagnosis, and prescription medication history. None of these interests is attenuated by the nature of the claims. To the contrary, the claims themselves put these



11610984_2

matters directly at issue, which is precisely what makes the case for pseudonymity especially strong: Plaintiff cannot litigate without those facts appearing in detail on the docket, and those facts are the most sensitive categories of personal information the *Sealed Plaintiff* framework is designed to protect.

<u>Factor 10: No Alternative Mechanism Adequately Protects Against the Harms</u>

Factor 10 asks whether there are alternative protective mechanisms that could substitute for pseudonymity. *Id.* There are not. Plaintiff has considered a protective order governing discovery documents, which would shield sensitive materials exchanged between the parties but would not prevent Plaintiff's name from appearing in the complaint, the docket caption, and publicly filed motion papers—which are the very materials that automated screening systems scrape. Sealing the entire record is not available absent compelling circumstances and would not be an appropriate use of the sealing power for an employment case of this nature. Redacting sensitive information from public filings is an option, but Plaintiff's name is itself the sensitive information in this context: the harm is the association of his name with this litigation, not the disclosure of any particular document.

Structural alternatives are equally inadequate. Proceeding solely through Lowick LLC is not possible for the Title VII, FMLA, NYSHRL, NYCHRL, and New York Labor Law claims, which belong to Plaintiff individually and on which he is the necessarily named party. Idv. Pl. Decl. ¶ 25. Even if the corporate co-plaintiff reduced the prominence of Plaintiff's name on some claims, his name would appear throughout the body of the complaint in connection with the same underlying facts, because the employment and tortious interference claims share a common nucleus of operative fact. *Id.*

Plaintiff respectfully submits that pseudonymity is the only mechanism that addresses the structural harm Plaintiff has identified: the permanent, algorithmic association of his name with his sexual orientation and psychiatric history on a public federal docket. No partial measure achieves that result, and no alternative adequately substitutes for it.

## III. THE FRUSTRATION OF REMEDIAL PURPOSE DOCTRINE PROVIDES INDEPENDENT SUPPORT

Beyond the ten-factor balancing test, courts have recognized that there is an additional, independent ground for pseudonymity where public identification would effectively nullify the remedy the plaintiff seeks. *See Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 467 (E.D. Pa. 1997) (recognizing that permitting public disclosure that destroys the plaintiff's livelihood would "frustrate the very purpose of the action"); *cf. Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004).

This principle applies with particular force here. The purpose of this action is to remedy the professional, economic, and psychological harm Capgemini caused through discrimination and retaliation. If Plaintiff is required to litigate publicly, the docket itself will inflict permanent, potentially career-ending harm through the algorithmic screening mechanism described above—harm that is irreversible because it cannot be undone by a favorable verdict, subsequent sealing, or any other judicial relief. Plaintiff would be forced to choose between forfeiting his right to seek redress and forfeiting his livelihood. That result is irreconcilable with the remedial purposes of Title VII, the NYCHRL, and the other statutes Plaintiff invokes. A less harmful alternative—pseudonymity—is available and causes no prejudice to the defendants.

## IV. THE EX PARTE PROCEDURAL POSTURE IS APPROPRIATE AND NECESSARY

Plaintiffs bring their motion on an *ex parte* basis in the first instance. No prior application for this or similar relief has been made to this or any other court. Local Civil Rule 6.1(d) authorizes this procedure where ordinary notice-of-motion practice is inadequate.

Here, giving Capgemini advance notice of a pseudonymity motion before the Court acts on it would accomplish the very public disclosure of Plaintiff's identity that the motion seeks to prevent. Capgemini is not yet a party to any pending action. It cannot be given notice under ordinary motion practice without that notice itself requiring the filing of a publicly identified complaint. There is no procedural mechanism, short of ex parte presentation, that preserves Plaintiff's identity while satisfying Rule 10(a)'s identification requirements in the first instance. Plaintiff's counsel additionally notes the 90-day Title VII filing deadline arising from the EEOC's issuance of Notices of Right to Sue on June 10 and July 1, 2026, as context for the timing of this application. Idv. Pl. Decl. ¶ 8.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

1. Granting Individual Plaintiff leave to proceed under the pseudonym "John Doe" in this action;

2. Directing that no filing in this matter shall disclose Plaintiff's legal name on the public docket;

3. Permitting Individual Plaintiff to disclose his legal name to Defendants, their counsel, and this Court under the terms of a protective order; and

4. Granting such other and further relief as the Court deems just and proper.

Dated: August 19, 2026
New York, New York

Respectfully submitted,

LEVY RATNER, P.C.

By: Dana Lossia
80 Eighth Avenue, 8th Floor
New York, New York 10011
(212) 627-8100
(212) 627-8182 (fax)
dlossia@levyratner.com

*Attorneys for Plaintiffs John Doe, Lowick LLC*

**CERTIFICATION OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1**

I hereby certify that the foregoing *Memorandum of Law in Support of Plaintiff's Ex Parte Motion to Proceed Under a Pseudonym* complies with the word count limit set forth in Local Civil Rule 7.1(c) for the United States District Courts for the Southern and Eastern Districts of New York. This memorandum contains 4,404 words (exclusive of title, caption, signature blocks, and any required certificates).

By: Dana Lossia